Appellants, Gene Sheryl Nix, Sandra Dianne Nix and Dewayne Nix (hereinafter either referred to individually or jointly asIntervenors) appeal the trial courts order denying their motion to intervene, arguing that their participation and the relief the

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State Respondent,
v.
Corey McKenzie Shelton Appellant,
 
 
 

Appeal from Laurens County
 James W. Johnson, Jr., Circuit Court Judge 

Unpublished Opinion No. 2006-UP-391
Submitted November 1, 2006  Filed December 6, 2006   

AFFIRMED

 
 
 
Joseph L. Savitz, III, of Columbia, for Appellant.
Assistant Appellate Defender Eleanor Duffy Cleary, of Columbia, for Appellant.
Attorney General Henry Dargan McMaster; Chief Deputy Attorney General John W. McIntosh; Assistant Deputy Attorney Donald J. Zelenka;
Assistant Attorney General S. Creighton Waters; all of Columbia; and Jerry W. Peace, of Greenwood, for Respondent.
 
 
 

PER CURIAM:  Corey McKenzie Shelton appeals his convictions for murder and possession of a firearm during commission of a violent crime, for which he received concurrent sentences of life imprisonment and five years, respectively.  Shelton argues the trial judge erred by refusing to direct a verdict acquitting him of the charges because the State failed to introduce any evidence he committed the crimes.  We affirm.[1]
FACTS
This case involves the drive-by shooting of fourteen-year-old Phillip Johnson, Jr. on August 4, 2001.  Corey Shelton, Derek Brown, and Ricky Latimore were indicted with murder and possession of a firearm or a knife during commission of a violent crime in connection with this incident.[2]  
On the night of the shooting, Johnson, his cousin Xavier Smith, and a number of friends attended a high school football game.  After leaving the football game, the boys went to a friends house on Pleasant View Drive, and hung out with ten to twelve boys in the front yard.  Smith testified that around 11:00 to 11:30 p.m., a large, dark-colored car, which had been parked nearby when the boys arrived, came down the road with two guns firing out the windows.  Someone in the group fired back at the car as it drove away.  Johnson was shot in the drive-by. 
Johnson died from his gunshot wound on the way to the hospital.  Bullet fragments removed from his body were sent to SLED for testing.  At the scene, officers found fifteen 7.62mm casings, seven .45 casings, as well as a 9mm casing.  Bullets that penetrated a nearby residence were also sent to SLED for testing.  
Smith could not identify the people in the assailants car.  Directly after the drive-by, he gave the police the names of Terrence Bishop, Darrell Brown, and K, but testified that those were just the names of some boys with whom he had gotten into an argument at the football game.  Smith also told the police at the scene that the car was green, while at trial he only remembered that it was dark.  
On August 25, 2001, Darryl Mosely was brought to the police station where he provided a statement against the co-defendants, who are his cousins.  At trial, Mosely retracted his statement, claiming that he never read the statement, that he was lying because the officers threatened his life, and that they had fed him the details and information in his statement.  He did, however, admit on cross-examination that the statement accurately reflected what he told the officer.  He also admitted at trial that he had seen the three defendants together before they left the Lions Den, but that he did not see any of them with a gun.  
Moselys original statement to police contained more incriminating information.  He said that on the night of the incident, he saw Shelton with an SKS rifle and a banana clip strapped around his neck.[3]  He stated that the three defendants then got into a green four-door Pontiac Catalina and drove off.  
On August 26, 2001, defendant Corey Shelton told Captain Williams where he could locate an AK-47.  Officers went to the place he described and found an AK-47, some banana clips for the AK-47, and a .32 caliber revolver.  
Defendant Derrick Brown made a statement to Chief Deputy Eddie Smith.  In the statement, Brown said that at about 11:00 to 11:30 p.m., on the night of the shooting, he was driving down Pleasant View Drive in his Green Pontiac Catalina and drinking beer when he heard a shot.  He said that he thought someone was shooting at him, so he pulled out his .45 caliber pistol and fired it out the window as he drove away.  He stated he then hid the gun.  Brown claimed he did not know who he was shooting at and did not know Phillip Johnson.  After he had made this statement, Brown personally led police to where he hid the .45 caliber pistol.  
The SLED examiner found that the bullet fragment taken from Johnson was too damaged to conclusively identify whether it came from Sheltons AK-47, but that its characteristics indicated it could have been fired from his weapon.  The bullet that killed Johnson was not from a .45 pistol.  The fifteen 7.62mm casings found at the scene were the type that could have been fired from Sheltons AK-47.  All seven of the .45 casings found at the scene were matched to Browns .45 caliber pistol.  The SLED examiner also conclusively matched the bullet that had penetrated a nearby house to Browns pistol.  Revolvers like Sheltons .32 caliber do not automatically eject casings, which explains why none were found at the scene, but the SLED examiner did conclusively match Sheltons revolver to the other bullet that had penetrated a nearby house.  
At the end of the States case and again at the conclusion of the trial, Shelton moved for a directed verdict, arguing the State failed to introduce any evidence he murdered Johnson.  The motions were denied, and the jury convicted Shelton of both murder and possession of a firearm during commission of a violent crime.  This appeal followed.
LAW/ANALYSIS
Shelton challenges the trial judges denial of his motion for a directed verdict.  Specifically, he argues that there was not substantial circumstantial evidence that Shelton committed, or aided and abetted the commission of, the murder of Philip Johnson.  This argument has no merit.
When reviewing the denial of a directed verdict, a South Carolina appellate court views the evidence in the light most favorable to the State to determine if there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused.  State v. Curtis, 356 S.C. 622, 633-34, 591 S.E.2d 600, 605 (2004); State v. Zeigler, 364 S.C. 94, 101-2, 610 S.E.2d 859, 863 (Ct. App. 2005).  If there is any direct evidence or any substantial circumstantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt can be fairly and logically deduced, then the case was properly submitted to the jury.  State v. Martin, 340 S.C. 597, 602, 533 S.E.2d 572, 574 (2000); State v. Cooper, 334 S.C. 540, 551-52, 514 S.E.2d 584, 590 (1999).  Evidence that merely raises a suspicion the accused is guilty is not sufficient to survive a directed verdict motion.  State v. Buckmon, 347 S.C. 316, 321, 555 S.E.2d 402, 404 (2001); State v. Muhammed, 338 S.C. 22, 26, 524 S.E.2d 637, 639 (Ct. App. 1999).   
Shelton contends that [a]t best, the State proved that, shortly before Johnson was killed, Shelton was armed with a rifle that could have fired the fatal shot.  We disagree.
The State introduced substantial circumstantial evidence linking Shelton to Johnsons murder.  The State proved Shelton had an AK-47 with banana clips that fired ammunition consistent with that which killed Johnson, and ejected the same casings as those found in the vicinity of Johnsons murder.  The State conclusively matched Sheltons .32 caliber revolver to a bullet that penetrated a nearby house.  The State also introduced a statement from Darryl Mosely that described Shelton on the night of the incident getting into the car, carrying what Mosely described as an SKS rifle with banana clips, along with Brown, who admitted driving the car and firing a pistol at the crime scene.  This evidence is sufficient to support submission to the jury.  See State v. Weston, 367 S.C 279, 625 S.E.2d 641 (2006)(finding circumstantial evidence sufficient to support conviction for murder where victims body was never found but she had mysteriously disappeared,  and where physical evidence at the residence defendant and victim shared, alongside defendants suspicious behavior indicated a murder might have taken place); State v. Freiburger, 366 S.C. 125, 620 S.E.2d 737 (2005)(finding circumstantial evidence sufficient to support conviction for a cab-drivers  murder where there was evidence that on the day of the murder, the defendant bought the same type of gun that killed the victim, where two days after the murder  he was staying at a motel close to where the victims cab was found, and where the defendant was arrested with the gun that ballistics indicated killed the victim); State v. East, 353 S.C 634, 578 S.E.2d 748, (Ct. App. 2003)(finding defendant not entitled to a directed verdict on one of seven counts of kidnapping where victim of that count did not testify, but other witnesses testified that victim was present at the scene).  Given the aforementioned substantial circumstantial evidence linking Brown to the murder, and viewing it in the light most favorable to the State, the circuit courts denial of the motion for directed verdict, and submission of the case to the jury, was proper.
CONCLUSION 
Based on the foregoing, the decision of the circuit court is hereby
 AFFIRMED.
HEARN, C.J., and KITTREDGE and WILLIAMS, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215(a), SCACR.  
[2] At the conclusion of the States case, and with the consent of the State, the judge directed a verdict aquitting Latimore. 
[3] An SKS is a Chinese-made rifle very similar to an AK-47, which fires the same ammunition, and the two rifles are commonly referred to by each others names.